Case number 08-3612, Robert Greene v. Illinois Education Labor Relations Board. All right, would the attorneys approach the bench? Tell us your names and who you represent. I'm Philip Piscopo, representing the petitioner Robert Greene. Good morning. Good morning, Your Honors. Timothy McPike, Assistant Attorney General, representing the Illinois Educational Labor Relations Board. I am Gilbert Feldman. I represent the union, and Mr. Manley is president. Okay. So essentially I think what we're going to do is give both sides approximately 15 minutes apiece, time for some rebuttal, obviously. You can split that time however you would like, and I'd like to get started whenever you're ready. Okay. Thank you. May I approach you? Certainly. Please. Good morning, you all. Good morning. I'm Philip, as I said before, I'm Philip Piscopo, and I represent Robert Greene, the petitioner. If you could keep your voice up a little. Sure. We have a big group, and they want to hear you. Not a problem, Your Honor. That's what you're saying. Sure. Perhaps it's appropriate that we have some high school students with us. I thought so, right. Because this case is about a, well, it's actually a middle school, but a middle school physical education teacher who wants to have a coaching position with the middle school. And he's looked at the collective bargaining agreement. He's a union teacher with the local 604 East Aurora Council of American Federation of Teachers, and he finds that there's a section that deals with extra duty assignments. And then if you go to the back of the agreement, there is something called differential assignments. And so he puts two and two together, and he says, well, these extra duty assignments, they're not defined anywhere else. And we have the differential assignments. They're supposed to go to teachers, and many statutes and other things in the law state that. And so Section 5.5 of the CBA provides that I should have to be able to select or even be involuntarily assigned to an extra duty assignment. And coaching of many different sports is on those lists of differential positions, and they bring along extra pay. And so my client would like to be able to have one of those extra duty assignments, or if nobody else wants it, they have him be assigned to one of those so he can help out his students even more than he already is. I mean, he's a physical education teacher, so he already knows that stuff. But then the district won't do that. The district apparently does something a different way. It seems like your opponent is basically taking the position that your client is really coming up with a definition for these two different types of positions that exist. And I guess my question to you would be, you know, what should we look at for definition purposes between the extra duty assignment and the differential assignment? That's a good question. And the CBA doesn't actually, it doesn't say extra duty assignments include these things and differential assignments include those things. It doesn't say. We won't find a definition in the CBA. Right. That's what I'm asking. You won't find that definition. So where do you go when you have something like that? Well, you can look at the usage of the parties, and that's a well-known principle of contract law, and I cited a couple cases for that in my briefs. The usage of the parties shows that extra duty assignments includes coaching. And in fact, one of those items that our client presented, he was pro se before the board and hired me after the board dismissed his claim. One of those, I found it to be an extremely important piece of evidence, and that is that an actual contract used by the district with a teacher says that the teacher is expected and has a professional duty to do coaching and other extracurricular assignments. I'm sorry. I quoted that wrong. It was coaching and other extra duty assignments. Now, when it came before the board. So you're relying on the word other to suggest that when it says other extra duty, that that puts coaching into the same ballpark as extra duty. Right. That coaching is a part of extra duty assignments, which makes sense. Perhaps some teachers don't want to coach. They don't like athletics. They just want to teach. Right. But that contract made it clear that no, you're a teacher, and so you're going to be expected to do coaching and other extra duty assignments, and some of those include band and other things like that. We have to go this far, however. Your opponent is saying we don't even need to get there because what the situation is here is you're appealing the actions of the union. Correct. And saying the union did not treat its member fairly and that they declined to bring this beef. I mean, they declined to file a grievance. And so the standard is not what's in the contract. The standard is how was this gentleman treated by the union, and they're saying the standard has to be an intentional standard. That's really what we're appealing. We're not appealing. Certainly. Right. Certainly. So is that what we're really appealing? We're really not appealing what the substance of the contract is. What you're appealing is whether or not the union dealt with its member in a fair manner and whether or not that's a case that appealed. And can I jump in on that, too, to make it a compound question? No problem. What I think we're all asking you is where is it that it says intentional conduct on the part of the union failing to bring the grievance. What authority are you relying upon to say to us they should have brought it, here's why they should have brought it, here's why it's wrong for them not to have brought it. I mean, if this were something like a harassment issue, certainly I think everyone would say the union should bring something like that as a grievance. But it sounds almost like this is a discretionary call on the part of the district and they don't want to hire someone as a coach if they don't have to. So what can the union, if it does go forward, what can it hang its hat on and say this is what we're relying upon to bring this grievance? Well, I mean, it's a two different question. Yeah, I think so. If I may take Justice O'Brien's first. You do raise an excellent observation that what he filed his complaint about was the union's breach of his duty of fair representation. And the courts have, and the case law makes clear that the courts have given the union discretion on what charges to bring, what charges to decline. The courts have never said, however, that the union can do nothing. But did the union do nothing here? I mean, he spoke to a number of people in the union and they said, look, this isn't worth it. We're not going to go there. It wasn't like they didn't talk to him. They talked to him, and granted, the conversations were not as friendly as we would all like, but there was some, from what we could see from what you've got in your brief, there's some cognition on behalf of the union member and some judgment that said we don't want to bring this. We don't think it's worth bringing this on behalf of all of our members because they're representing everyone. Well, I would respectfully disagree. So how is that intentional to say the person wasn't treated fairly if there was some kind of judgment on behalf of the union, that they don't think this is worth it and they're not going there and they don't want to do it? Well, I respectfully disagree that the notion that, well, we talked to him. They talked to him, but the only purpose of talking to them is to tell them that you are bothering us. You don't have a case. We've never done it this way before. The district's never done it this way before, so stop bothering us. You're wasting my time. That's not an investigation that the law has contemplated and has required unions to do under their duty of fair representation. I'm sorry, what investigation would they have to do? You're really relying on what the collective bargaining agreement is and what the interpretation of that is. So your clients say, look, I think this is the interpretation, and the union is saying, well, it's never been that way. We've never worked that way with the district. This is how we've always interpreted it. You don't have anything. We'll see it on behalf of the members. We're just not going to go there. What investigation would the union have to do, I guess? Well, I would think they would at least have to look at his contentions, look at his legal arguments. But there's nothing that suggests that that wasn't done. I mean, isn't what we have here a disagreement about the interpretation of the sections of the CBA that are at issue here? And a mere disagreement is not going to be sufficient to constitute intentional misconduct. That may be the case if the union ---- I mean, you have a very heavy burden. That's the problem. I mean, the Paxton case, I'm sure you're familiar with it, a very interesting case. It's particularly interesting because it seems to mix the extra duty and deferential usage of using the word. So it's interesting on a lot of different levels. But for purposes of what truly is at issue here, what Paxton says is that you have to show that there was a deliberate and severely hostile and irrational treatment or fraud, deceitful action, or dishonest conduct. That is a very heavy burden. And what we're saying is how can we right this decision, because where in this record can we find evidence of that? Well, let me see. I've got to think. Just a moment. We've all asked three questions. No problem. Well, I guess I would look toward some of the case law that describes what unions did do. And, for example, in the Jones case. In the Jones case, that teacher was assigned and he wanted to file a First Amendment challenge with the Federal District Court. And he said, well, we've looked at this and we don't think you have a case. You had a case. There was a case in that other one. I don't remember the name of it. But there was a case that somebody else brought and went all the way up to the Seventh Circuit. But we don't think it's worth it on behalf of our members to take this for you. We don't think the case has enough merit. We don't want to incur those costs. In that case, the court noted that the union had three attorneys look at the legal issues that were raised by this person, and those three attorneys all concluded that the case didn't have a lot of merit and it wasn't worth pursuing. We don't have that here. All we have is Mr. Manley saying, don't bother us. We've always done it this way, and so you want to do it another way. But a union is supposed to challenge that when that's not right. If it isn't contemplated by the Collective Bargain Agreement, the union has to fight for its members. It has to go to bat for its members. Wait a minute. Where does it say that? Find me a case that says, it sounds like what you want us to write. Let me rewind the tape. What you want us to write is that a union has to file a grievance on behalf of a member even if the union does not feel that it's a valid grievance. There's got to be a standard. No, that's not what I'm saying. In fact, that would contradict Jones, because in Jones, the union declined to do anything for him. But the court found that that was a reasonable exercise of their discretion. In the Timko case. It sounds like you want us to write that a union has to have an outside person, either a lawyer or someone, take a look at a grievance to determine whether or not it is a cognizant one. Because that's what the Jones case did. You're saying that the lawyers look at it. So how do you want us to write this case that in some way gives your client relief? What would the standard be? That the union can't just itself say no? It has to have somebody else take a look at it? What didn't the union do that you want us to put in an opinion? They need to have done it. I guess if I were the one writing the opinion and I wanted Mr. Green to win, I would say that the union has discretion, but it doesn't have discretion to do nothing. It doesn't have discretion to just put him aside and say, we're not going to fight for you at all. And the record shows that that's what happened. Isn't that taking away the union's discretion then? No, I don't think so. How can you write, you have discretion, but you can't do nothing? Well, wait a minute. That means I don't have discretion. It means I always have to do something. And if I have to do something, write that paragraph that tells the rest of the world, what is the something that you want the union to do? Well, perhaps you can compare it to a trial court's discretion that you judges, justices would review. The trial court has discretion on admitting certain kinds of evidence. It has discretion on whether to dismiss a complaint under Rule 103B, various things like that. But that doesn't mean it can't just do whatever it wants. It has to at least do something and have something that would support its actions. Okay, what would that something be? Give us an example of what you want us to write that can give the unions of the world some kind of idea of what they should do. How about this? Robert Greene presented many instances of use of the term extra-duty assignments to include things like coaching. In the grievance stage and before the board and now before this court, many items of case law that basically construed them together, extra-duty assignments or coaching. The union hasn't even given, didn't give the board, didn't give Mr. Greene, hasn't given you justices, hasn't given even one example, not one, as to an extra-duty assignment that doesn't include coaching or other differential positions. Rewind the tape, okay? Sure. I'm sorry if I'm grilling you, but we have to write something. That's a different issue than what is it you want us to write that the union must do. You're saying they can't do nothing. So what must they do if someone comes to them and they don't think it's worth it? Your standard is that's not enough. They have to do something. What do they have to do at that stage, not at the appellate court stage, at the stage where the union member is there before they can deny filing the grievance, what does the union have to do to satisfy your standard? They have to do at least a basic investigation as to whether the claim has any merit or not. All right. And what would that investigation in this situation look like, since we're really talking about the interpretation of the collective bargaining agreement? What would the investigation look like? Well, in this case, they can look at the usage of the term and decide, well, does he have any chance of success, and then balance those other factors that were set forth in Jones. I think what you're thinking about is the merits of the proposed complaint, which is one of the factors in Jones. I'm thinking about this case is about whether or not the union acted intentionally with fraud, deceit. And you said, look, they can't do nothing. They have to do something. Okay. Now tell them what they've got to do. Right. You write the paragraph. What does the union have to do? The union has to, at a minimum, do a basic investigation as to whether Mr. Green's claim that 5.5 of the CBA includes coaching as part of an extra duty assignment and provide at least some sort of reasoning to support its decision as to whether it does or it doesn't pursue a claim. It can't just say, we've always done it this way before, so don't bother us anymore. And that's essentially what happened. And all Mr. Green got back was, you've lost before, we've always done it this way, stop bothering us. They have to do something to at least look at his claim and decide whether or not it has any merit, whether it has any likelihood of success, whether the cost of proceeding on it will be worth something, and whether it will benefit the union membership. And there's none of that anywhere in this record. And that's where the union went wrong. And going on to the hostility prong, that's part of it. And they decided, the union decided that Mr. Green has been being a pest. And they didn't want him to bother them anymore. And so, I mean, Mr. Green submitted all sorts of things to the board as to why his complaint had merit. All we get from the union side are letters saying that, yeah, I think what he wants is absurd. No explanation as to why he thinks it's absurd. It just declares it. He can't just declare that a claim has merit without even looking at it. And that's what he believes was wrong, and that's what I believe was wrong. Does the union have the discretion, however, to say, well, we're heading into negotiations for a new contract. We've got other things that are more important. We have to prioritize. We understand what you're saying. We think you should be a teacher or a coach because you're obviously qualified to be a coach. But we're not going to use our ammunition now at this stage of where we are to bring this grievance against the school district because we're picking our battles, in other words. And that's not one we want to fight. Do they have that authority? Yes, they do. I believe under the case law they do have that authority to say, we have more important battles to fight elsewhere. We can't do that for you at this time. We're not even saying you're wrong. We're just saying, sorry, but maybe wait for two years, or maybe we'll work it in later. But it's not as expressly defined as you would agree to. We all agree, I think, that it's not expressly defined like a bargaining agreement. That would be an exercise of its discretion. That would be more than doing nothing. That would be, well, we looked at this and we thought about it. We thought about it, and it's not the right time. Right. There's none of that in here. It's just leave us alone, don't bother us. And that's where the union went wrong in this case, and that's where it dropped the ball. And, I mean, union employees are essentially captives of their unions. I mean, if I was to get up and not really say anything for my client, then he can fire me and go find somebody else. He can't do that with his union. He's stuck with them. And so they have a responsibility not to treat him with intentional misconduct. And by failing to do anything with his claim, and instead calling him a pest both among themselves and with the district, that was a hostile treatment. And not only that, but then they go and misrepresent what the evidence is before the board. Mr. Green gave that teacher's contract that says coaching and other extra duty assignments, and Mr. Manley's response didn't say, didn't have any explanation as to why that doesn't really mean what Green says it means. Instead, he misquotes the provision. He takes out other. That's a crucial word in that. It's not hard to conclude if they're going to misrepresent things to the board, they're going to misrepresent things to the people as well. But Mr. Green never got a chance to explain that because his case got dismissed. I believe I've covered everything. If you have any other questions, I'll just wait for rebuttal. Thank you. May it please the Court, Your Honors, I'll be brief. First of all, as your questions demonstrate, the issue is not whether Mr. Green's interpretation of the contract or the union's interpretation of the contract is correct. That is not an issue. As a matter of law, that is not an issue in this case. The only issue is, is there anything in the record to support a claim of willful, deceitful, fraudulent behavior, or irrational hostility. I submit there's nothing in the record, and counsel has not given you any citation to any place in the record where there's any evidence of that. First of all, his argument that the union did nothing is factually incorrect. Mr. Green presented a fairly complicated argument to the union about his interpretation of the contract. And unfortunately for Mr. Green, he was making that argument to the man who drafted the contract. And that argument failed both before Mr. Manley looked at it and said, no, that's not what the contract means. So Mr. Manley had to read his argument, he had to analyze his argument, and he had to come to a legal, his interpretation of the contract to say, no, that is not what the contract means. That is sufficient under the case, under this Court's own case. Jones, the exercise of discretion, considers the perceived merits of the complaint. That is all that the union is required to do. I mean, is there any problem with having the person who wrote the contract also be the person who's going to interpret a question about the contract? I mean, could one argue that that person comes to the contractual interpretation question with perhaps a bias that, you know, I've participated in the writing of this contract and I know what it means and I know what it says and this is what it means for that type of thing, as opposed to conducting a good faith investigation and perhaps getting some other people involved in this for purposes of examining how these positions were treated in other places? Well... It seems to me that there's a lot of confusion about this extra duty and differential use of these words when it comes to these assignments. I mean, I've done some reading. Of course, I haven't read all the cases, but I've done some reading and it just looks like these terms are just used interchangeably and it's disturbing because it's, you know, this is an area where, quite frankly, to interchangeably use these terms can be very problematic. I'd like to put my answer in quotations because my client is very specific that our position is the court can't even get to that issue. Well, I think we can get to the issue, though, as to whether the union performed a good faith investigation. Well, okay. Let's take it from that point. Let's take it from that point. Let's take the question framed in that fashion. Did the union perform a good faith investigation by having the person who is sort of, you know, attached to this contract since this person was responsible largely for, you know, the authorship determine what that contract means? Was that a good faith investigation? Yes, it is, and let me explain my answer, but I have to put my answer in quotations because I don't want to overstep my client's instructions here. If this were a contract case and you look to what the meaning of the contract is, we all know that the first interpretation is the plain meaning of the contract. The court is correct in asserting there's no plain meaning here. Differential isn't defined any place in the contract. The second stage of interpreting a contract is you look to within the bounds of the contract to see if interpreting the contract as a whole, we can make sense of the meaning of the word that may be ambiguous. The meaning of the word differential under Mr. Green's interpretation would mean that a first-year English teacher could choose on a voluntary basis to become the head of the English department for a salary of an additional $4,000, and if there was nobody who volunteered to become the head of the English department, they would find the lowest inverse seniority is what the contract says. So they would find the first-year teacher to make her head of the English department. So Mr. Green's interpretation of the contract prima facie is absurd. I don't think that's what he's saying, but I'm going to let the opponent respond to that. Right. So that would be the second, if this were a contract case, but I'm addressing your issue of whether it's good faith. Right. Okay. So this court would do that to determine was there good faith here. You'd read the contract and you'd say, well, a first-year student wouldn't be selected on an inverse seniority basis to be head of the English department if differential means what Mr. Green would say. So that would be the thing you'd look to to see was that a good faith interpretation. Well, yeah, because the opposite interpretation is an absurdity. The third thing a court would look to in a contract case is what the parties who drafted the contract intended. Well, the record shows that Mr. Green submitted his grievance to the principal of the middle school and to the superintendent who both said that isn't what we meant when we signed this contract. He also submitted it to Mr. Manley. These are the parties to the contract. Remember, union members are essentially third-party beneficiaries to the CBA. So if the court were to look to the interpretation of the contract, they'd look to what the parties intended, and if they could go outside the four corners of the document, they would look to contemporaneous statements or subsequent statements about what the parties intended. The problem is that the stated intent does not seem to be consistent with practically how these words are being applied across the board. That's my problem. I'm really struggling with that because you have a stated intent, and you can just say, well, it's in black and white, and it says this. But, you know, sometimes you have to go beyond the black and white and ask yourself, but really what is happening out there, and what's happening out there, is that these terms are being used interchangeably. Yes. And perhaps Mr. Green is being, in a sense, unfairly treated because of the way in which these terms sometimes are used to benefit a certain person or a certain position that that person wants. But Mr. Green's situation, no, it's going to be interpreted in a different fashion. I agree that Mr. Green submitted evidence of what even the school used in a different contract, but it was a different contract. And his evidence consists of cases of this court, cases of other courts, cases of other places, where, as Your Honor states, it's used interchangeably. So at best it would be, you know, arguably an arbitrary or ill-drafted here that they didn't define. But you made it sound as though what he was proposing was ridiculous. It is. Are you saying then that he is saying, that's interesting, that things that were interpreted in our cases are ridiculous. But let me just ask you this. My understanding of what you're saying about Mr. Green in his interpretation is that he's saying there is no discretion. If that position is available, you must give it. I was under the impression he was saying, if there's a coaching position available and I request it, I should be considered for it, not that I have to get it. I could be considered for it. And it's more income, and it's more, you know, other kudos he gets for being involved in the school, and he gets to help kids, which is why he's a teacher in the first place. So I don't see the ridiculousness of that interpretation. Tell me where I'm wrong. Well, first of all, I don't interpret his argument as Your Honor's interpreted. I interpreted his argument as not only that he had a right to apply for the position, and he did, and he did, but both the union and the school say, no, that's our criteria are whether you're qualified, not the fact. I interpret and I believe the record shows his argument is, no, I applied for it, I get it. His argument is the contract says on a first-come, first-served basis. That's his argument. Extra duty assignments under the contract come on a first-serve, first. But isn't there an underlying requirement to be qualified? No. Extra duty assignments are separate. The union and the school interpret differential to be a separate category from extra duty. Mr. Green's argument, I believe, is that, no, they're the same. Yeah, I think that's his argument. Yes, but his argument is absurd, and I didn't mean to imply the other cases are absurd. His argument is absurd. Because we never have to get there, because the union has the right to say, no, I'm not, we're not bringing a grievance, and that's the end. Right. It's a union. They do not have to bring every grievance, and that's what the law says. That's your position, and you say we don't go any further than that. We're going home. Right, and I was, this whole thing was just addressing Justice Schreiber. Sorry. It's good faith because under any contract law, you'd go to the party's interpretation here. But we don't get to good faith. We don't get to intentional misconduct. I mean, good faith is a positive standard. Here we have a negative standard. Has the person been intentional fraudulent? You know what I'm saying? Yes. That's the rub I'm having. Yes, and I agree, and all this was just to address that one question. But Your Honor is correct. This case is very simple. There's no showing of fraud, intentional misconduct. There's no showing of hostility, and I wanted to just address two quick points. First of all, under this court's decision in Murray, there was an issue of whether there was a statement sufficient to the rise to the level of irrational hostile conduct. That's Murray at 629 and at 634. The allegation was that the employer was condescending, condescending stance. The board held that that was not sufficient to rise to the level of irrational hostility. This court held that the board was within its discretion to make that statement. Here, as we argue in our brief, and I won't go into detail, all the statements that Mr. Green shows Mr. Manley making were characterizations of Mr. Manley's arguments. They were not personal characterizations of Mr. Manley himself, and those characterizations were actually accurate. So there's no showing here. Just as I can attack Mr. Manley's, Mr. Green's arguments, if I start making hostile comments towards Counselor Mr. Green, this court is going to let me know, and on certain terms, I'm out of bounds. That same kind of standard has to apply here. Mr. Manley was well within doing his job in determining the perceived merits of the complaint, which is the standard for the union's investigation, to say that Mr. Green's arguments are absurd and that Mr. Green needs to stop wasting everyone's time with these arguments that have already been presented and rejected. So that cannot rise to the level of irrational hostility. There are arguments about the merits, statements about the merits of the claim that Mr. Green was bringing. If there's no further questions, I'd like to turn over the balance of my time to Co-Counsel. Thank you. Thank you, Your Honors. And we would ask that the Court support, affirm the decision of the Board. Thank you. You may please the Court. Mr. Green, the only reason I filed an appearance in this case is because of the frightening prospect of what Mr. Green is asking you to do. He is asking you to ignore six decades of clear law and to change the law because of what you may think it should be rather than what it has always been interpreted to be and what the legislative intent always has been. Even before the Illinois statute was amended, the federal courts began to say that if a union was guilty of gross negligence, they could have a duty of fair representation claim. The Illinois legislature changed the state statute to eliminate that concept and to state that only an intentional discrimination claim was cognizable within the statute. That is the law, and if the court were to hold the law in effect, reaches the question of who has the right or the wrong interpretation of the collective bargaining contract as the standard, the law will be turned on its head and you're going to be flooded with cases and every grievance where somebody feels its interpretation is right and the union's interpretation is wrong. Clearly, if the union interpreted this clause in such a way that Mr. Green's claim was denied but other people's claim was granted under the same language, that would go to the question of intention. But nothing that is raised in this case goes to the question of the union's intention. Mr. Manley, as has been indicated, wrote this language with the school district. They agree what it means. Mr. Green disagrees. It is not, as much as I know the shortcomings of telling a court what it can't do, the fact of the matter is the issue of whose interpretation is right and whose interpretation is wrong is not before the court. And that's why I appeared here to make a short argument, and I'm open to questions. No. Thank you, Counsel. Thank you, Counsel. You're welcome. Thank you, Your Honor. Just a few things. Counsel for the Board brings to light this statement that Mr. Manley, that I was the one who drafted this provision. And when you look at the actual record where he's describing that, it just says, I personally negotiated this provision. I don't think it means what Green says it means. Therefore, we're all done. He doesn't put in a single word as to why his position is different from Mr. Green's, why his position makes any sense at all. It just says, I know it doesn't mean what Mr. Green says, and that's part of what the union has done in the case, which is they haven't done anything except declare that Green's wrong. And that's a failure to act in good faith. And one of the cases, especially Jones and other cases, they say the duty of fair representation, as outlined in the Education and Labor Relations Act, does require that the union act in good faith. But as you understand Mr. Feldman's point, that he's saying if every time someone brings something, a potential grievance to the union, and they say, hmm, we're just not going to do any on this one, or maybe it's not the right time, or maybe another, you know, we'll think about it, maybe we'll see if it's a critical mass or it's happening with a lot of people, then we'll respond and file a grievance. If we said that if they didn't file a grievance every single time, that would be intentional conduct, then the floodgates would be open. Do you agree with that? Well, it's the classic floodgates argument. It's the classic floodgates argument. And I don't agree that the floodgates would open just because Mr. Green has found that the union has totally failed to do anything for him on this case. If the union had done what Mr. Green asked, if they had looked at the case, they would have said, look, here are some examples of extra duty assignments that are not coaching. This is, and the contract means this, and because this is, here are some documents that show. They didn't do any of that. They just dismissed him out of hand, just declared that what he wants is absurd, and that's it. That's not quite that far. Because they're saying we're the ones who had, in the contemplation of our agreement, we did never, we never intended to include this. So we, you know, we're the parties, we're the ones who were going back and forth negotiating this. We never intended it to be included. At least it seems to be included. So therefore, sorry, you don't really have a legitimate grievance at this time. Maybe we can do something for you later, but not now. But they don't offer a single shred of evidence, usage, anything to support that. Mr. Green put in lots of evidence showing why his version is right. They don't do anything to show why their version is right. But if you and I reached an agreement on something, to sell a car or something, and then a third party came in and said, well, no, I don't think that's what you two intended, and we said, yes, it is, wouldn't that be enough? Well, that's a third party. That's somebody that has nothing to do with the auto transaction. Mr. Green is not a third party. He's the person who's supposed to be benefited by this. Make him a third-party beneficiary of the contract, in my hypo. I mean, you know, hypothetically. That person has an interest in saying it, and we say, oh, no, no, we negotiated. We know what we intended. We never intended for that to be the deal. It was a one-year lease or something like that, not a sale, something like that. We know what we intended because we did it. And so you don't really, you know, you're misinterpreting our intentions. Except in your example, the law doesn't say that the third-party beneficiary has a right to be represented by one of the other parties in the car sale. Here the law does say that Mr. Green has a right to be fairly represented by the union, and the union just failed to do that. You had raised a question about whether people should be qualified in order to be coaches and sign up for those as extra duty assignments. I don't think Mr. Green would ever say that someone who knows nothing about football should be a football coach. I didn't read it that way. I didn't read your brief that way either. But to address counsels, he talks about how a first-year English teacher could become the head of the English department. Well, Mr. Green's argument doesn't go there because differential positions don't include head of the English department. So I looked at the list after he spoke, and that doesn't even exist. So that's a red herring. It's not really applicable to this. I didn't think his interpretation was absurd. It just wasn't, in their view, not supported by the terms of the collective bargaining agreement. Sure. And with regard to the Murray case and the condescending attitude, the irrational treatment and the hostility isn't so much the language that was used. I mean, there were no swear words or any bad language used in that. But it's in the context of the whole thing, their total lack of any willingness to proceed for him, coupled with statements that we think you're wasting everybody's time and your position's absurd, so we're not going to help you. It's really the whole thing. I don't think the case turns on the specific language used, but it's turned on the entire attitude of the union as displayed to Mr. Green when he was just trying to get his coaching position that he's qualified for and that the district wouldn't give him and the union wouldn't go to bat for him. And actually, I just remembered one other thing about the qualified, is that one of the pieces of evidence that Mr. Green submitted in this was that people outside the bargaining unit are receiving these coaching positions, including convicted felons. And he brought that out. And he stated that he was a convicted murderer, and it turns out that, and this is all on the record, the person who has this football coaching position, he was charged with murder. He pleaded guilty to aggravated battery, which is a felony. And so this was a convicted felon who was outside the bargaining unit. And so all this talk that the union and the board say, well, we should be able to have qualified people, they're not putting qualified people in there. They're putting convicted felons who are not part of the bargaining unit into these positions. And that excludes not only Green, but all the teachers. And so for that reason, we believe that the board's decision should be reversed. This is not a simple difference of opinion. This is a total failure on the union's part to conduct a good faith investigation. Thank you all for your time. Thank you. Thank you, counsel. The case was very well argued. The briefs were well written. I want to thank both sides for the presentation today. We'll take the case under advisement.